**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| CRISTIANA TUDOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 1:26-cv-001525 |
| | ) | |
| | ) | |
| RENTPREP SCREENING SERVICES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Plaintiff Cristiana Tudor, by counsel, hereby files this Complaint against Defendant RentPrep Screening Services LLC ("RentPrep") and alleges as follows:

## INTRODUCTION

1. This is an action for actual, statutory and punitive damages, costs and attorney's fees brought against Defendant pursuant to 15 U.S.C. § 1681 *et seq*. (Federal Fair Credit Reporting Act or "FCRA").

2. Recognizing that employers, lenders, and landlords use consumer reports to deny people jobs, credit, and housing, Congress enacted the Fair Credit Reporting Act to ensure that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).

3. Defendant RentPrep purchases and compiles this public record information on consumers before reselling it to a variety of third parties, including landlords and property managers who purchase and use RentPrep's reports to screen prospective tenants.

4. Among the information RentPrep provides on prospective tenants are criminal

records, prior evictions, civil judgments, and bankruptcies.  Due in large part of the sensitive nature of this information and its importance to decisions on whether consumers will receive housing, employment, or credit, the FCRA requires consumer reporting agencies like RentPrep to enact and follow reasonable procedures to ensure the "maximum possible accuracy" of the information they collect and publish on a consumer.  *See* 15 U.S.C. § 1681e(b).

5.      Despite this explicit requirement, RentPrep failed to maintain and follow reasonable procedures for ensuring the accuracy of the criminal history on Plaintiff Cristiana Tudor by publishing to third parties, including her prospective landlord, reports that included an expunged criminal charge.

6.      After obtaining a report from RentPrep that included Ms. Tudor's expunged charge in 2025, Ms. Tudor's prospective landlord decided not to rent to her, causing her to incur additional costs to search for and obtain different housing and to even sleep in her car for a few days while she desperately searched for new housing at the last minute.

7.      Faced with the unjust and unfair results of RentPrep's careless maintenance and publication of inaccurate information about her, Ms. Tudor brings this action under the FCRA to obtain relief for RentPrep's harmful, willful, and unreasonable conduct.

## JURISDICTION

8.      The Court has jurisdiction under the FCRA, 15 U.S.C. § 1681p and 28 U.S.C. § 1331. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Plaintiff resides in this Division and District and applied for the housing that she was denied in this Division and District.

## PARTIES

9.      Plaintiff Cristiana Tudor is a natural person and a "consumer" as protected and governed by the FCRA.

10.     Defendant RentPrep Screening Services LLC is Delaware limited liability company with its principal place of business in New York.  RentPrep sells tenant screening services to landlords and property management companies, including Ms. Tudor's prospective landlord in this case.  RentPrep is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f), as it is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties.

## FACTUAL ALLEGATIONS

11.     In August 2025, Ms. Tudor applied for and was offered to rent a room in Annandale, Virginia.  After agreeing to the rental price and planning for Ms. Tudor to move in, Ms. Tudor's prospective landlord asked her to submit a background check application through RentPrep.  The cost of this background check was $29.

12.     Once Ms. Tudor completed this form, on or about August 17, 2025, RentPrep prepared and published a tenant screening report to Ms. Tudor's prospective landlord.

13.     The report on Ms. Tudor published by RentPrep included a 2022 misdemeanor charge from Fairfax County, that was ultimately nolle prosequi.

14.     By the time RentPrep issued this report, Ms. Tudor had already paid a third party to move her mattress to the room she was renting from her prospective landlord and was actively planning to move in.

15.     But once he received RentPrep's report, the landlord indicated to Ms. Tudor that he was concerned about the 2022 charge.

16.     The landlord then abruptly changed his mind, indicating that he could no longer rent the room and, ultimately, ceasing all communication with Ms. Tudor.

17.     Ms. Tudor had already left her prior housing by this point, however, as until that

point the landlord had approved her to move in and allowed her to drop off her mattress.  It was only after RentPrep published its report containing the dismissed charge that the landlord changed his mind and denied her housing.

18.    Upon information and belief, the most significant—if not primary—reason the landlord denied housing to Ms. Tudor was the charge on RentPrep's screening report.

19.    However, this criminal charge information was false, grossly inaccurate, and derogatory.

20.    Specifically, the Commonwealth Attorney dropped the charge after confirming that Ms. Tudor was not involved in the alleged conduct.  And, ultimately, the court expunged the charge from Ms. Tudor's records.  Yet, despite the court's expungement order—which was in the public records for the criminal proceedings—RentPrep continued to report the charge long after the expungement.

21.    As a result of RentPrep's reckless publication of information that even a cursory review would have confirmed had been lawfully expunged, Ms. Tudor lost out on housing and was forced to reside in her car temporarily while she desperately tried to find new housing.  She suffered significant embarrassment, distress, frustration, and humiliation from this experience.

22.    Upon information and belief, the inaccurate reporting of the expunged charge resulted from RentPrep's failure to follow reasonable procedures to assure the maximum possible accuracy in the preparation of the consumer reports they published and maintained regarding Plaintiff.

23.    If RentPrep had followed reasonable procedures (or any procedures whatsoever), it could have easily determined that the charge had been expunged.  Indeed, RentPrep had the criminal proceeding case number for the charge that, upon a cursory review, would have shown

4

the charge was expunged by a published court order.  If RentPrep had updated their data on criminal charges more frequently, it could have also detected that the charge was no longer reported by the court and removed it far sooner.

24.    Instead of employing a simple procedure to detect and withhold expunged criminal charges, RentPrep has elected to conduct only cursory and less frequent reviews of criminal charge information and to report that information without further scrutiny in order to save money and satisfy customers' screening report requests more quickly.  In other words, RentPrep has prioritized profit and speed over accuracy, despite the sensitive and highly consequential nature of the information in their consumer reports—information that RentPrep know landlords rely upon to decide whether or not to provide housing to a consumer.

25.    After Plaintiff learned about the inaccurate and derogatory report, Plaintiff disputed the expunged charge with RentPrep.  In response to this dispute, RentPrep confirmed that the expunged charge was indeed no longer reported by the court system and thus should not have appeared on her screening report.

26.    Unfortunately, by that time, the damage was done and Plaintiff had already been denied the housing opportunity.

### **FACTUAL ALLEGATIONS REGARDING WILLFULNESS**

27.    If RentPrep had reasonable procedures to assure maximum possible accuracy, it could have determined that the information it furnished regarding Plaintiff had been expunged. RentPrep's failure to adopt reasonable procedures to assure maximum possible accuracy was both knowing and reckless.

28.    RentPrep's failure to ensure that the consumer's criminal information has not been expunged is knowing. RentPrep made an intentional choice to update its databases less frequently

and to omit any searches for expungement orders to save money, regardless of the inaccuracy that would undoubtfully result from less frequent updates and more thorough reviews of public dockets.

29.     Upon information and belief, through customer and consumer complaints, RentPrep has received substantial notice establishing the inadequacies of its procedures, including similar failings regarding the reporting of expunged records.

30.     RentPrep could have had a policy in place to update criminal charges more frequently and/or to pull information on expungements, but it chose not to in order to preserve its bottom line.

31.     As part of the process of assembling consumer reports, RentPrep utilizes a variety of algorithms and filters to aggregate information from a variety of sources.

32.     It is standard practice for consumer reporting agencies to write filters and algorithms to filter out inaccurate information.

33.     RentPrep, consistent with standard industry practices, could have written an algorithm or filter to ensure that all of its reports would exclude records that had been expunged or to more frequently screen for expungements in the databases they pull from.

34.     RentPrep failed to implement these algorithms despite the fact that it easily could have done so and that these types of algorithms are standard in the credit reporting industry.

35.     However, RentPrep places its business interests above the rights of consumers and unlawfully reports such information because it is cheaper for RentPrep to produce reports containing information that is not lawfully reportable than it is for RentPrep to exert proper quality control over the reports prior to their being provided to its customers.

36.     RentPrep unlawfully report such information because: (1) it wants to maximize the

6

automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the unlawfully reported entries; (2) RentPrep believes that its customers would prefer a "false positive" over a "false negative"; and (3) the practice of unlawfully reporting such information allows RentPrep to produce more voluminous reports, which creates the impression to its customers that the reports contain more information and are a "value add."

37.      RentPrep's practices violate a fundamental protection afforded to consumers under the FCRA, are contrary to the unambiguous language of the statute, and are counter to longstanding judicial and regulatory guidance.

**COUNT ONE:**
**15 U.S.C. § 1681e(b)**

38.      Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth at length herein.

39.      As detailed above, RentPrep violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report it furnished regarding Plaintiff.

40.      As a result of RentPrep's conduct, Plaintiff suffered actual damages including but not limited to: increased out-of-pocket costs to apply for and obtain new housing; emotional distress, humiliation, and embarrassment from the false reporting of the expunged charge and false insinuation that she is a criminal; and the significant distress of losing housing and having to relocate at the last minute due to RentPrep's derogatory reporting.

41.      RentPrep's violation of 15 U.S.C. § 1681e(b) was willful, rendering it liable pursuant to 15 U.S.C. § 1681n.  In the alternative, the RentPrep was negligent, entitling Plaintiff

to recover under 15 U.S.C. § 1681o.

42.    Plaintiff is entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorneys' fees from RentPrep in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

WHEREFORE, Plaintiff moves for judgment against RentPrep, as alleged, for statutory, actual, and punitive damages; for equitable and injunctive relief; and for attorneys' fees and costs and such other relief the Court does find just and appropriate.

**TRIAL BY JURY IS DEMANDED.**

Respectfully Submitted,
**PLAINTIFF**

By:  */s/ Kristi C. Kelly*
Kristi C. Kelly, VSB #72791
Matthew G. Rosendahl, VSB #93738
Kelly Guzzo, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: matt@kellyguzzo.com

Scott A. Surovell, VSB #40278
Surovell Isaacs Petersen & Levy PLC
4010 University Drive, Suite 200
Fairfax, VA 22030
Telephone: 703.277.9750
Facsimile: 703.591.9285
Email: ssurovell@siplfirm.com

*Counsel for Plaintiff*

8